UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


BRENNAN CHASE BEATY and BOBBY M.
BEATY, JR., as Co-Personal
Representatives of the Estate of
Bobby M. Beaty, deceased,

       Plaintiffs,

v.                       Case No.  8:10-cv-1457-T-33MAP

MOUNIR K. COUNSUL,

       Defendant.
_____/

BRENNAN CHASE BEATY and BOBBY M.
BEATY, JR., as Co-Personal
Representatives of the Estate of
Bobby M. Beaty, deceased,

       Plaintiffs,

v.

CENTURY BANK,

       Defendant.
_____/

CENTURY BANK,

       Third-Party Plaintiff,

v.

WACHOVIA BANK, N.A., MOUNIR K.
CONSUL, TRAVELERS EXPRESS COMPANY,
INC., and US BANK,

       Third-Party Defendants.
_____/

**ORDER**

    This cause comes before the Court on Defendant FDIC's Motion

for Summary Judgment as to the Second Amended Complaint of

Plaintiffs (Doc. # 62) and Defendant Travelers Express Company,

Inc.'s Motion for Summary Judgment as to Amended Third Party Complaint of the FDIC (Doc. # 65). Plaintiffs oppose the FDIC's motion (Doc. # 72), and the FDIC opposes Travelers' motion (Doc. # 66). As explained below, the FDIC's motion is denied as to Counts I and II and granted as to Count III, and Travelers' motion is denied.

## I.  **Background**

In August 2003, Plaintiffs' predecessor-in-interest, Bobby M. Beaty, Mounir Consul & Associates ("Consul"), and Darryl Phillips, who is not a party to this action, entered into an agreement to construct a new residence (the "Project") on 605 Kingfisher Lane, Longboat Key, Florida. Shimmell Aff. at ¶ 12, Ex. D; Second Am. Compl. at ¶ 9.[1] Beaty, owner of the property, retained Consul to act as his agent with regard to the Project and Phillips to act as the contractor for the Project. Id. Phillips retained attorney David D. Bone as counsel with regard to the Project. Shimmell Aff. at ¶ 12.

Beaty obtained funding for the Project through a construction loan (the "Loan") from the FDIC's predecessor-in-interest, Century

---

[1]The Shimmell Affidavit is document number 64 in the record, and the Second Amended Complaint is document number 3 in the record. For ease of reference, the Court will cite only to Shimmell Aff. and Second Am. Compl. when referring to these documents.

Bank, FSB ("Century Bank").[2]   The terms of the Loan are
memorialized by a construction loan agreement dated September 26,
2003 between Beaty and Century Bank (the "Loan Agreement").
Shimmell Aff. at ¶ 6, Ex. A; Second Am. Compl. at ¶ 5, Ex. A.  The
Loan was secured by a note and mortgage from Beaty to Century Bank.
Second Am. Compl. at ¶ 4.

The Loan Agreement provides, in relevant part, as follows:

> 2.(f) [Century Bank] shall have no obligation either
> express or implied, to [Beaty], to [Phillips] or to any
> third parties, to verify that advances made pursuant to
> this [Loan] Agreement are actually used to pay for labor
> or materials furnished in connection with the [Project].
> [Beaty] agrees to assume all risks in the event
> [Phillips] fails to pay for any labor or materials so
> furnished.
>
> ...
>
> 5.  [Beaty] agrees to advise [Century Bank] in writing,
> prior to the first disbursement, of where the
> disbursements are to be made....  Nothing contained in
> this [Loan] Agreement, the Note of Mortgage executed
> concomitant herewith, shall impose upon [Century Bank]
> any obligation to see the proper application of any
> disbursements made pursuant to this loan, and the sole
> obligation of [Century Bank] shall be to disburse funds
> as set forth herein, provided there exists no default
> under this [Loan] Agreement, or the Note of the Mortgage
> executed simultaneously herewith.

Doc. # 72-1, Ex. A.

Between April and July 2004, Century Bank made three
disbursements (the "Loan Disbursements") from the Loan in response

---

[2]Because the FDIC as Receiver has succeeded to "all rights,
titles, powers, and privileges of" Century Bank (12 U.S.C. §
1821(d)(2)(A)(i)), the FDIC and Century Bank are used
interchangeably throughout this Order.

to three draw requests (the "Draw Requests").  Shimmell Aff. at ¶ 14, Ex. G-1.  Each Loan Disbursement was funded by an "agent check" issued pursuant to an Agent Check Agreement between Century Bank and Travelers,[3] which identified Third-Party Defendant Travelers Express Company, Inc. ("Travelers") as the "drawer," and U.S. Bank as the "drawee"[4] (the "Loan Disbursement Checks").  Shimmell Aff. at ¶ 8-9, Exs. B & C.  Each Loan Disbursement was paid with Travelers' funds on deposit with U.S. Bank.  Id.

The first draw request received by Century Bank was dated April 22, 2004 ("First Draw Request").  Shimmell Aff. at ¶ 14, Ex. G-1.  The First Draw Request was signed by both Consul and Phillips and sought a disbursement in the amount of $74,410.40. Id.  In response to a request by Century Bank, on April 29, 2004, Bone's office faxed to Century Bank a copy of Beaty's September 26, 2003, authorization, which instructed Bone to make a payment related to the Project payable to either Consul solely or Consul and Phillips jointly.  Shimmell Aff. at ¶ 14, Ex. H.  Beaty directed Century Bank to make all disbursements under the Loan to Consul and  Phillips.  Id. at ¶ 14.

---

[3]A party enters into an agent check agreement with a company such as Travelers for the purpose of earning an additional stream of income on the funds a bank holds in float while checks are waiting to be cashed.  Doc. # 65 at 11.

[4]Under the Uniform Commercial Code, "'Drawee' means a person ordered in a draft to make payment," and "'Drawer' means a person who signs or is identified in a draft as a person ordering payment."  Fla. Stat. § 673.1031 (1992).

Century Bank issued a Loan Disbursement Check made payable to Consul and Phillips in the amount of $74,410.40. The $74,410.40 Loan Disbursement Check was subsequently endorsed by both Consul and Phillips and deposited into Consul's bank account at Wachovia Bank ("Wachovia") numbered ******3568 ("Consul's Wachovia Account") on April 30, 2004. Shimmell Aff. at ¶ 15, Ex. I-2. This Loan Disbursement Check is not at issue in this case. Id. at ¶ 16.

On or about May 4, 2004, Consul made a second draw request on the Loan in the amount of $25,202.00 ("Second Draw Request"). Shimmell Aff. at ¶ 14; Second Am. Compl. at ¶ 11. In response to the Second Draw Request, Century Bank issued the $25,202.00 Loan Disbursement Check. Shimmell Aff. at ¶ 8, Ex. C-2. The $25,202.00 Loan Disbursement Check was endorsed by Consul only and was deposited in Consul's Wachovia Account. Shimmell Aff. at ¶¶ 8 & 15, Ex. C-2 & I-3.

The third draw request was dated July 2, 2004 ("Third Draw Request"). Shimmell Aff. at ¶ 14, Ex. G-2. Century Bank issued the $182,622.88 Loan Disbursement Check. Shimmell Aff. at ¶ 8, Ex. C-3-4. The $182,622.88 Loan Disbursement Check was deposited in Consul's Wachovia Account. Shimmell Aff. at ¶¶ 8 & 15, Ex. C-3-4 & I-4.

Over a month after the last Loan Disbursement Check was deposited in Consul's Wachovia Account, Phillips alleged that Consul improperly negotiated two of the three Loan Disbursement

5

Checks.  Specifically, Phillips claimed that Consul deposited the Loan Disbursement Check in the amount of $25,202.00 (the "$25,202.00 Disbursement Check") without Phillips' signature, and the Loan Disbursement Check in the amount of $182,622.88 (the "$182,622.88 Disbursement Check," collectively, the "Disputed Disbursement Checks") with a forgery of Phillips' signature. Plaintiffs claim Consul subsequently converted the proceeds of the Disputed Disbursement Checks and failed to provide an accounting of the proceeds.  Second Am. Compl. at ¶¶ 12, 15.  Specifically, Plaintiffs allege that Consul deposited the proceeds of the Disputed Disbursement Checks in his personal bank account and used them for a down payment on the purchase of a home and for other projects.  Id. at ¶ 19.  Consul denies any wrongdoing. Shimmell Aff. at ¶ 12, Ex. E.

Phillips executed two affidavits of alteration dated August 24, 2004, describing the missing and forged endorsements relating to the Disputed Disbursement Checks.  Shimmell Aff. at ¶ 16, Ex. J. On August 24, 2004, Melody Shimmell, Vice President, Risk Management/Fraud, Century Bank, wrote Travelers regarding the $25,202.00 Disbursement Check that was negotiated without Phillips' endorsement and asked Travelers to contact her regarding the collection status of this item from Wachovia.  Doc. # 72-1, Ex. B. Travelers returned the $25,202.00 Disbursement Check to Wachovia for reimbursement, but Wachovia refused to reimburse Travelers, and

6

Century Bank refused to credit Beaty's loan account (the "Loan Account"). Second Am. Compl. at ¶ 23. Similarly, Shimmell wrote Travelers on August 24, 2004, regarding the $182,622.88 Disbursement Check that was negotiated with a forged endorsement and asked Travelers to contact her regarding the collection status of this item from Wachovia. Doc. # 72-1, Ex. D. Travelers returned the $182,622.88 Disbursement Check to Wachovia for reimbursement, but Wachovia refused to reimburse Travelers, and Century Bank refused to credit Beaty's Loan Account. Second Am. Compl. at ¶ 23. Wachovia sent a response directly to Shimmell at Century Bank denying the requested reimbursement. Doc. # 72-1, Ex. D.

On August 25, 2004, Nancy L. Dost, Vice President, Construction Administration, with Century Bank wrote to Beaty as follows:

> Please be advised that Mr. Darryl Phillips has reported that he was unaware of the request for and negotiation of the check issued for the 2nd draw on the above referenced construction loan. He also stated that he had not received any portion of that draw. Due to the questionable endorsement on Check #58912462884 issued in the amount of $182,622.88, we have requested Wachovia Bank to return the funds to Century Bank.

Doc. # 72-1, Ex. E.

The Loan was timely satisfied in July 2005. Shimmell Aff. at ¶ 17, Ex. K; Second Am. Compl. at ¶ 25, Ex. E.

In 2005, after Beaty passed away, Plaintiffs brought suit against Consul to recover the proceeds of the Disputed Disbursement

Checks in state court.  On or about March 2006, Plaintiffs filed a separate action in state court against Century Bank seeking to recover the proceeds of the Disputed Disbursement Checks in the aggregate amount of $207,824.88 plus attorney fees pursuant to the Loan Agreement and § 57.105(7), Fla. Stat.  Century Bank filed a Third Party Complaint against Wachovia and Travelers for breach of warranty, indemnification and other causes of action.  In 2008, the state court consolidated Plaintiffs' lawsuit against Consul with Plaintiffs' lawsuit against Century Bank.  In November of 2009, Century Bank failed and the FDIC, as a result of its appointment as receiver, succeeded to "all rights, titles, powers, and privileges" of Century Bank.  12 U.S.C. § 1821(d)(2)(A)(i); Shimmell Aff. at ¶ 3.  The FDIC participated in the state court action and substituted itself as the party Defendant in place of Century Bank, obtaining a court order on substitution on or about April 14, 2010.

On or about June 30, 2010, the FDIC removed the action to federal court.  See Doc. # 1.  Subsequently, the FDIC dismissed Wachovia from the action.

## II.  **Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine

8

issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving

party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. <u>Analysis</u>

### A.   <u>Defendant FDIC's Motion for Summary Judgment</u>

Plaintiffs have alleged three claims against the FDIC: (1) improper charge of a bank account; (2) breach of a loan agreement; and (3) unjust enrichment.  The FDIC argues that this action is a creative attempt by Plaintiffs to circumvent the Uniform Commercial Code's allocation of liability for risk of loss caused by a forged endorsement on a check.  The FDIC asserts that, under the UCC, the risk of loss is ultimately placed on the depository bank, which is Wachovia, followed by the drawee bank, which is U.S. Bank.  The FDIC argues that such risk of loss clearly does not fall on the FDIC, who is the successor-in-interest to the agent for the drawer, Travelers.

Each Loan Disbursement was made by an "agent check" issued pursuant to an Agent Check Agreement between Century Bank and Travelers.  Shimmell Aff. at ¶ 8, Exs. B & C.  The upper-left-hand corner of each Loan Disbursement Check designates Travelers as the "drawer" and U.S. Bank as the "drawee" or "payor" as those terms are used in the Uniform Commercial Code.  Id.  The depositor on the account from which the Disputed Disbursement Checks were drawn was Travelers.  Id.

Century Bank argues that because it was neither the drawer nor the drawee/payor on any of the Loan Disbursement Checks, none of the Loan Disbursement Checks were presented to Century Bank for payment.  Shimmell Aff. at ¶ 10.  Century Bank submits that it received the Loan Disbursement Checks from Travelers after they had been negotiated, presented for payment and honored and otherwise had no role or involvement in the clearing of the Loan Disbursement Checks.  Id.

According to paragraph 5 of the Loan Agreement, Century Bank funded the Loan by placing its net proceeds in a "Loan in Process" account ("LIP Account").  Shimmell Aff. at ¶ 11.  Century Bank alleges that Beaty had no right to or interest in the LIP Account, or the funds held in the LIP Account while they were in the LIP Account.  Id.; see also Loan Agreement, Doc. # 72-1, Ex. A at ¶ 5 ("[Century Bank] hereby acknowledges[] proceeds of said loan in the amount of $747,000.00 for deposit in the [LIP] Account of

11

Lender."). Century Bank used the LIP Account as an internal account to fund the Loan. Shimmell Aff. at ¶ 11. The LIP Account was funded with Century Bank funds, and Century Bank was the sole drawer on the LIP Account. Id. Beaty was not a depositor or a drawer on the LIP Account. Id. During the time period relevant to this action, Beaty did not have a bank account with Century Bank related to the Loan. Id. at ¶ 7.

### 1) Count I - Violation of Florida Statutes § 674.401

Count I against the FDIC is for violation of § 674.401, Fla. Stat., which sets forth the circumstances under which a bank may charge a customer's account.

Florida Statutes § 674.401(1) states:

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.

Fla. Stat. § 674.401(1).[5]

Plaintiffs allege in Count I that the Loan Disbursements were placed in the Loan Account at Century Bank, which named Beaty as depositor, and that Century Bank improperly charged this Loan Account when paying the Disputed Disbursement Checks. Plaintiffs seek damages from the FDIC for "improperly paying" the Disputed Disbursement Checks and "debiting Beaty's construction loan

---

[5]Chapter 674 of the Florida Statutes is titled "Uniform Commercial Code: Bank Deposits and Collections."

account." Second Am. Compl. at ¶ 31.

The FDIC argues that to establish a claim pursuant to § 674.401, Fla. Stat., Plaintiffs must prove the following: (1) Beaty had a bank account with Century Bank; (2) Century Bank debited Beaty's bank account with Century Bank; (3) Beaty did not authorize Century Bank to debit his bank account with Century Bank; and (4) the debit of Beaty's bank account was not in accordance with any agreement between Beaty and Century Bank.

The FDIC argues that Count I fails for three reasons. First, Beaty did not have a bank account at Century Bank from which the Disputed Disbursement Checks were paid. Next, Plaintiffs cannot establish that Century Bank debited any bank account in Beaty's name. Finally, Beaty authorized the issuance of the Disputed Disbursement Checks. Specifically, Beaty directed that the Loan Disbursement Checks be made payable to Consul and  Phillips. Shimmell Aff. at ¶¶ 13, 14, Exs. B, F, G.

The FDIC cites only to § 674.401 in support of its argument that Beaty did not have a bank account with Century Bank and therefore cannot allege a claim pursuant to this statute, but cites to no case law that construes this statute section as only relating to bank accounts and as inapplicable to loan accounts. Plaintiffs argue that there is a genuine issue of material fact as to who can be held liable as the drawee of the checks at issue. The case law applicable to the specific facts of this case is scarce. However,

there is case law that supports construing the Loan Account as an account under the statute and circumstances presented here.

In _Sehremelis v. Farmers & Merchants Bank_, 7 Cal. Rptr. 2d 903 (Cal. Ct. App. 1992), a construction company obtained millions of dollars in loans from the bank, which were placed in a "loans in progress" account.  The construction company was to submit vouchers to the bank when construction expenses arose, and the bank would in turn issue checks to pay those expenses.  Two employees of the company misappropriated funds from the account by submitting forged vouchers, causing the bank to issue checks in the name of companies the employees had created.  The construction company was a "payor" who could sue for breach of warranties because the checks were paid from the "loans in progress" account, making the construction company functionally similar to a drawer from a personal checking account.  _Id._ at 906.

While the statutory section at issue in _Sehremelis_ is not the same statutory section at issue in the instant case, the analogy is equally applicable.  Although Travelers was technically the drawer and U.S. Bank was technically the drawee on the Disputed Disbursement Checks in the case at bar, these entities acted on behalf of Century Bank, who in turn, it appears, acted, at least in part, as Beaty's agent.  Moreover, the checks were paid from accounts containing Century Bank's loans to Beaty.  As such, Plaintiffs are functionally similar to a drawer from a personal

14

checking account and have standing to bring this action.  See also
Cyran v. Sovereign Bank, No. 07-40263-FDS, 2008 WL 2510146 (D.
Mass. June 10, 2008)(UCC conversion claim and breach of contract
case in which plaintiffs alleged that defendant bank improperly
honored disbursement checks issued jointly to plaintiffs and their
construction   contractor   from   construction   loan   account
notwithstanding the fact that the negotiated checks were not
endorsed by plaintiffs).

When a drawer's account is charged for an altered check, a
drawer's recourse is against the drawee bank, whose recourse is
then against the depositary bank.  Cheese & Grill Rest. Inc. v.
Wachovia Bank, N.A., 970 So.2d 372, 375 (Fla. 3d DCA 2007); Jett v.
Lewis State Bank, 277 So.2d 37, 39 (Fla. 1st DCA 1973); see also
Fla. Stat. §§ 673.4171, 674.2081.  The ultimate liability for a
forged instrument lies with the depositary bank that accepted the
check from the forger and the forger himself.  U.C.C. § 3-405(b)
cmt. 1; J. Walter Thompson, U.S.A., Inc. v. First BankAmericano,
518 F.3d 128, 131 n.2 (2d Cir. 2008).

In this case, Beaty's Loan Account was charged for altered
checks.   Plaintiffs' recourse then is against Century Bank,
arguably the drawee bank, whose recourse is against the depositary
bank, Wachovia.   Although the Court is not convinced that
Plaintiffs will ultimately be able to prove a claim under §
674.401, it finds that the FDIC has not established that summary

judgment is warranted; a question remains as to whether the FDIC is the drawee bank under the facts of this case.  The FDIC has not met its initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Hickson Corp, 357 F.3d at 1260 (citing Celotex Corp., 477 U.S. at 323).  Accordingly, the Motion for Summary Judgment is denied as to Count I.

### 2)   **Count II - Breach of the Loan Agreement**

Plaintiffs allege that Century Bank had a duty under the Loan Agreement to properly pay all checks on Beaty's Loan Account and that Century Bank breached the Loan Agreement by improperly paying the Disputed Disbursement Checks, which contained a forged or missing endorsement and were, therefore, not properly payable. Second Am. Compl. at ¶¶ 36, 37.  The FDIC moves for summary judgment and argues that Century Bank did not breach the Loan Agreement.

The elements of a breach of contract action are: "(1) a valid contract; (2) a material breach; and (3) damages." J.J. Gumberg Co. v. Janis Servs., Inc. 847 So.2d 1048, 1049 (Fla. 4th DCA 2003)(citing Abbott Lab., Inc. v. Gen. Elec. Capital, Inc., 765 So.2d 737, 740 (Fla. 5th DCA 2000)).  For a breach to be material, "a defendant's nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty."

16

<u>Atlanta Jet v. Liberty Aircraft Servs., LLC</u>, 866 So.2d 148, 150 (Fla. 4th DCA 2004)(citing <u>Beefy Trail, Inc. v. Beefy King Int'l, Inc.</u>, 267 So.2d 853, 857 (Fla. 4th DCA 1972)).

The FDIC argues that under the explicit terms of the Loan Agreement, Century Bank's sole obligation was to cause the Loan Disbursement Checks to be issued to whomever Beaty specified. <u>See</u> Loan Agreement, Doc. # 72-1, Ex. A at ¶ 5 ("the sole obligation of [Century Bank] shall be to disburse funds as set forth herein.").   The FDIC views Count II as an attempt to impose liability on the FDIC under the Loan Agreement for payment of the Disputed Disbursement Checks over missing and forged endorsements and debiting Beaty's Loan Account.   The FDIC submits that imposing such liability would circumvent the allocation of risk of loss for improperly indorsed instruments under the UCC as argued in relation to Count I.

The language in the Loan Agreement that Century Bank's sole obligation was to disburse the funds as set forth therein does not prove that Century Bank had no further duties.   Even if so construed, there is a genuine issue of material fact as to whether Century Bank actually disbursed the funds as set forth therein or if payment of the Disputed Disbursement Checks over missing and forged endorsements might constitute disbursement of funds in a manner other than that set forth in the Loan Agreement.

The FDIC again submits its arguments that Century Bank did not

pay these checks (U.S. Bank did), and Beaty did not have an account with Century Bank during the relevant time period in support of summary judgment as to Count II.  For the reasons discussed above, the Court finds these arguments unavailing.  Accordingly, the FDIC's motion as to Count II is denied.

### 3)   Count III - Unjust Enrichment

In Count III, Plaintiffs allege that Beaty conferred a benefit upon Century Bank by "repaying all sums pursuant to the Loan Agreement to Century Bank, even though the Total Amount of the Checks was never credited back to Beaty by Century Bank," and that "Century Bank has voluntarily chosen not to credit Beaty's account with the Total Amount of the Checks and has thus retained the benefit of the total amount in favor of Century Bank."  Second Am. Compl. at ¶¶ 41, 43.

The FDIC argues that a claim for unjust enrichment is not cognizable where there is an express contract between the parties on the same subject matter.  This Court agrees.[6]

Florida law provides that a claim for unjust enrichment cannot be pursued where an express contract exists between the parties concerning the same subject matter.  See Diamond "S" Dev. Corp. v. Merchantile Bank, 989 So.2d 696, 697 (Fla. 1st DCA 2008); Kovtan v. Frederiksen, 449 So.2d 1, 1 (Fla. 2d DCA 1984); Williams v. Wells

---

[6]Plaintiffs did not address the FDIC's argument as to the unjust enrichment claim (Count III) in their Response.  See Doc. # 72.

<u>Fargo Bank N.A.</u>, No. 11-21233-CIV, 2011 WL 4901346, at *6 (S.D. Fla. Oct. 14, 2011)(unjust enrichment may be pleaded in the alternative only where one of the parties asserts that the contract governing the dispute is invalid).

An express contract, the Loan Agreement, exists between Beaty and Century Bank.   Second. Am. Compl. at ¶¶ 5, 9-10, Ex. A. Additionally, Plaintiffs concede that their unjust enrichment claim is based on the same subject matter as that contemplated under the Loan Agreement.   <u>Id.</u> at ¶ 41 ("Beaty conferred a benefit upon Century Bank by repaying all sums pursuant to the Loan Agreement to Century Bank").   As such, Plaintiffs' unjust enrichment claim is precluded, and the FDIC's Motion for Summary Judgment is granted as to Count III.

Accordingly, the FDIC's Motion for Summary Judgment is denied as to Counts I and II and granted as to Count III.[7]

**B.   <u>Third-Party Defendant Travelers' Motion for Summary Judgment</u>**

Travelers moves for summary judgment as to Counts 19, 20 and 21 in the Amended Third Party Complaint (Doc. # 2) in which the FDIC maintains third-party claims against Travelers for

---

[7]Given this Court's disposition of the FDIC's Motion for Summary Judgment, it will not address Plaintiffs' other arguments in opposition thereto, i.e., that the FDIC's Motion for Summary Judgment is an improper attempt to assert an untimely 12(b)(6) motion and that the FDIC is estopped from asserting a lack of liability on the Disputed Disbursement Checks.   Notably, the Court finds both arguments to be without merit.

indemnification, equitable subrogation and contribution based on the Disputed Disbursement Checks.

It is undisputed that Travelers is not a party to the Loan Agreement between Beaty and Century Bank.  It is also undisputed that Century Bank and Travelers were parties to the Agent Check Agreement that allowed Century Bank to sell and use Travelers' agent check products.  Shimmell Aff. at ¶ 8, Ex. C.  Century Bank disbursed the proceeds of the Loan through "agent checks" issued in accordance with the terms of the Agent Check Agreement.  Id.  The disbursements under the Loan were paid from Travelers' bank account with U.S. Bank through the Loan Disbursement Checks (which include the Disputed Disbursement Checks).  Id. at ¶¶ 8, 9, Ex. B.  In accordance with paragraph 10(a) of the Agent Check Agreement, Century Bank reimbursed Travelers for the full amount of the Loan Disbursement Checks from Century Bank's LIP Account.  Id. at ¶ 11.

Travelers argues that if the FDIC's third-party claims are based on the Agent Check Agreement instead of the Disputed Disbursement Checks, then the language of the Agent Check Agreement assigns the risk of loss on any funds disbursed pursuant to the Agent Check Agreement to Century Bank, and Travelers is entitled to summary judgment.  Travelers cites to paragraph 10, "Liability," of the Agent Check Agreement, which provides that:

> [Century Bank] is absolutely liable to pay to [Travelers]
> all Trust Funds and other funds due under this Agreement,
> whether or not [Century Bank] is negligent or at fault,
> and regardless of how the funds become lost, missing, or

stolen, whether by the honest or dishonest act of any person, or mysteriously, or by an act of God, or otherwise.

Agent Check Agreement, Doc. # 64, Ex. C at ¶ 10.

Although not cited by Travelers, the Agent Check Agreement further provides, in relevant part, as follows:

2.   <u>Purpose of this Agreement</u>.  The purpose of this Agreement is to authorize [Century Bank] to use and sell [Travelers'] Agent Checks as agent and trustee of the Company.

[...]

11.  <u>Indemnity</u>.

(a)   [Century Bank] will in any event unequivocally Indemnify [Travelers] against all loss, expense, and damages (including attorneys' fees), together with interest, sustained by [Travelers] as a result, in whole or in part, of any act or omission to act, whether honest, dishonest, negligent, or otherwise, by [Century Bank] or by [Century Bank's] employees or other representatives (whether within or without the scope of their employment) in breach of this Agreement or arising from it.

(b)   If [Travelers] refuses to authorize payment by Settlement bank of an Agent Check at [Century Bank's] request, the Indemnity of [Century Bank] to [Travelers] provided in subparagraph 11(a) applies to any loss, expense or damages incurred by [Travelers] arising from that action, whether or not the Agent Check is ever paid.

(c)   **Except as provided in subparagraph 11(a) and 11(b) above, and in subparagraph 12(d) and paragraph 13 below, [Travelers] agrees to indemnify, defend at its expense and hold harmless, [Century Bank] from and against any and all claims by third persons for losses, liabilities, damages, actions or expense incurred by [Century Bank] by reason of the use or sale of Agent Checks pursuant to this Agreement.**

>        (d)  Indemnity payable by any party will in every case
>             include reasonable collection costs, interest
>             expenses and attorneys' fees incurred.
>
>   12.  <u>Stop Payments</u>.
>
>   [...]
>
>        (d)  [Century Bank] agrees to indemnify [Travelers] and
>             pay all costs, expenses, and damages, including
>             attorney fees, which [Travelers] may incur arising
>             from its refusal to provide payment of an Agent
>             Check at [Century Bank's] stop payment request.
>
>   13.  <u>Replacement Checks</u>.  If [Century Bank] has information
>        that an issued Agent Check has been stolen, lost,
>        destroyed, or otherwise will not be presented for
>        payment, [Century Bank] may provide user or purchaser
>        with a replacement check.  All of the provisions of this
>        Agreement relating to the issuance, handling, and payment
>        of Agent Checks apply to replacement checks.  [Century
>        Bank] will indemnify and hold [Travelers] harmless from
>        any and all claims, including defense of the same whether
>        or not suit is brought, arising out of payment by
>        [Travelers] of replacement checks, used or sold by
>        [Century Bank].

Agent Check Agreement, Doc. # 64, Ex. C at ¶¶ 2, 11, 12 and 13 (emphasis added).

The FDIC argues that the evidence reveals that Century Bank fully complied with paragraph 10(a) by reimbursing Travelers for the full amount of each of the Loan Disbursement Checks (including the Disputed Disbursement Checks) from Century Bank's LIP Account. Shimmell Aff. at ¶ 11.  This Court finds that Travelers' reliance on paragraph 10(a) to support its Motion for Summary Judgment is unavailing as it is silent on the issue of indemnity, and it is undisputed that Century Bank fully complied with its obligations under paragraph 10(a) of the Agent Check Agreement.

The Agent Check Agreement indemnity provision of paragraph 11, however, states that Travelers must indemnify the FDIC against "any and all claims by third persons," such as Plaintiffs in this case, "by reason of the use or sale of Agent Checks" unless one of the four exceptions set forth in paragraph 11(a), (b), 12(d) or 13 of the Agent Check Agreement apply.  Agent Check Agreement, Doc. # 64, Ex. C at ¶ 11(c).

Travelers did not address the indemnity provision in its Motion for Summary Judgment and consequently did not allege that any of these exceptions to the indemnity provision apply.  The Court, upon independent examination, finds that none of the exceptions are applicable.  See Doc. # 66 at 8-10.  As such, the Court finds that the indemnity provision precludes summary judgment in favor of Travelers.

Travelers also asserts that if liability is based on the Agent Check Agreement, then the claims are not properly third-party claims pursuant to Rule 14(a), Fed. R. Civ. P., because they do not have the same basis as the claims alleged by Plaintiffs against the FDIC in the complaint.  Federal Rule of Civil Procedure 14 governs third-party practice.  It permits a defendant in the original action to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  "The plaintiff may assert against the third-party defendant any claim arising out of the transaction or

occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(3).

Travelers argues that the FDIC cannot maintain its third-party claims against Travelers pursuant to Rule 14 because Travelers was not a party to the Loan Agreement and the disbursement of the proceeds of the Loan through the Disputed Disbursement Checks was unrelated to the Agent Check Agreement. The FDIC, however, points out that the Disputed Disbursement Checks issued pursuant to the Loan Agreement were, in fact, "agent checks" issued in accordance with the Agent Check Agreement. Shimmell Aff. at ¶ 8, Ex. B. The Agent Check Agreement provides that Travelers indemnify the FDIC against "any and all claims by third persons for losses, liabilities, damages, actions or expense incurred by [the FDIC] by reason of the use or sale of Agent Checks pursuant to this Agreement." Agent Check Agreement, Doc. # 64, Ex. C at ¶ 11(c). Accordingly, this Court finds that the FDIC's third-party claims against Travelers for indemnification, subrogation and contribution arise out of the transaction or occurrence that is the subject matter of Plaintiff's claim against the Third-Party Plaintiff, the FDIC, and are properly before this Court pursuant to Rule 14.

Finally, Travelers points to the FDIC's argument that Plaintiffs lack standing to sue the FDIC because Beaty never owned an account at Century Bank and submits that it must follow that the FDIC then lacks standing to pursue any third party on the Disputed

24

Disbursement Checks because the FDIC asserts that it is not a party to those checks. Travelers submits that, accordingly, it is entitled to summary judgment against the FDIC based on the lack of third-party plaintiff standing of the FDIC. This argument, however, is unavailing. As discussed in detail above, the Court finds that Plaintiffs may continue to pursue Counts I and II against the FDIC, and, as such, the FDIC may continue to pursue its third-party claims against Travelers.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant FDIC's Motion for Summary Judgment as to the Second Amended Complaint of Plaintiffs (Doc. # 62) is **DENIED** as to Counts I and II and **GRANTED** as to Count III.

(2) Defendant Travelers Express Company, Inc.'s Motion for Summary Judgment as to Amended Third Party Complaint of the FDIC (Doc. # 65) is **DENIED.**

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 2nd day of December, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record